An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-17

Filed 17 September 2025

Cumberland County, No. 23CRS250900-250

STATE OF NORTH CAROLINA

v.

RANDY DINGLE

Appeal by Defendant from Judgment entered 24 July 2024 by Judge George R. Hicks, III, in Cumberland County Superior Court. Heard in the Court of Appeals 6 August 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Mary L. Maloney, for the State.*

*Drew Nelson for Defendant-Appellant.*

PER CURIAM.

Defendant Randy Dingle appeals from a Judgment entered upon a jury verdict finding him guilty of Resisting a Public Officer. On appeal, Defendant argues the trial court erred by: (1) allowing the State to point to him while questioning witnesses, (2) denying his Motion to Dismiss and his renewed Motion at the close of all evidence, and (3) denying his Motion for Judgment Notwithstanding the Verdict. For the

reasons stated herein, we hold Defendant received a fair trial free from error.

## I. Factual and Procedural Background

Around 3:00 p.m. on 6 March 2023, Sergeant Richard Murphy of the Cumberland County Sheriff's Office conducted a traffic stop after receiving information about a vehicle parked outside the Cumberland County Courthouse without registration. He observed the vehicle for some time until the car left the parking lot. Sergeant Murphy followed the car for less than a mile before turning on his blue lights to pull over the vehicle. The vehicle promptly stopped safely in a turning lane in the middle of the road. Defendant was driving the car.

Sergeant Murphy approached Defendant in his vehicle and asked for Defendant's license and registration, to which Defendant refused. Defendant provided a military ID card, informed Sergeant Murphy he did not believe in laws or the Constitution, and continuously attempted to contact his insurance company by phone while Sergeant Murphy kept requesting a license. Defendant argued with Sergeant Murphy that he did not need to provide a license because he was not driving, but rather, he was traveling. There was one other passenger in the car who was never identified but was fully cooperative with the officers.

At least four officers arrived at the scene during the stop. Lieutenant Luis Fermin heard Sergeant Murphy conducting the traffic stop over the radio and came over to assist him. Lieutenant Fermin and Sergeant Murphy informed Defendant that he would be arrested for "resisting, delaying, and obstructing" Sergeant

Murphy's investigation by refusing to produce a license. Sergeant Murphy stated he needed the license to verify Defendant's identity. After Defendant refused to step out of the vehicle, the two officers removed Defendant from the vehicle, handcuffed him, and detained him.

After Defendant was handcuffed, Sergeant Clarke arrived to check on the officers conducting the stop, and Sergeant Knotts arrived with his caged police vehicle to transport Defendant. Defendant was taken to Cumberland County Jail. Sergeant Murphy noted Defendant's traffic stop took forty to forty-five minutes, while a typical stop takes fifteen to twenty minutes. There were no audio or video recordings of the traffic stop because, according to the officers, they did not and were not required to have body cameras at the time.

On 13 June 2023, Defendant was tried and convicted in Cumberland County District Court of one count of Resisting a Public Officer and one count of Failure to Carry a Valid Drivers License. Following the entry of judgment on 13 June 2023, Defendant gave proper notice of appeal to Superior Court. Prior to trial, the charge for Failure to Carry a Valid Drivers License was dropped because Defendant had renewed his license in a timely manner after his arrest. On 23 July 2024, Defendant pleaded not guilty to the remaining charge of Resisting a Public Officer and proceeded to trial.

At trial, all four officers testified. The State asked the officers if they had come into contact with "Mr. Dingle, the defendant" or "the defendant, Mr. Dingle."

However, the State did not ask the officers to point out or directly identify the individual who had been driving the car during the traffic stop. During Sergeant Clarke's examination, the State asked him twice if he had come into contact with "Mr. Dingle, here today,"—the first time referring to Defendant as "the defendant, Mr. Dingle" and the second only referring to Defendant as "Mr. Dingle." Sergeant Clarke responded "yes" to the second question; the other officers also responded affirmatively to the State's first question about "Mr. Dingle, the defendant." Defendant was repeatedly referred to as both "the defendant" and "Mr. Dingle" throughout trial. At no point did Defendant object.

At the close of the State's evidence, Defendant, through counsel, made a Motion to Dismiss, stating:

> [T]his instruction lays out five elements in order to convict somebody of this crime. Not only has the State not met its burden in meeting all of the elements in the light most favorable, they have not identified Mr. Dingle as the perpetrator of any crime.

The trial court agreed with defense counsel's observations that none of the witnesses at the trial had pointed out Defendant in the courtroom as the perpetrator. However, the trial court observed the State had twice "pointed towards" Defendant while the officers were being asked about Defendant's identity. The trial court noted physically pointing at the defendant "is not the proper practice[,]" but concluded it was "close enough that on that ground alone, [it would] deny" Defendant's Motion to Dismiss.

Defendant renewed his Motion to Dismiss after declining to present evidence. The trial court denied the renewed Motion and the case proceeded to the jury. The jury returned a guilty verdict on the one charge of Resisting a Police Officer.

Prior to sentencing, Defendant made a Motion for Judgment Notwithstanding the Verdict based on the same reasons underlying his Motions to Dismiss. The trial court denied the Motion, reasoning: "[The State] pointed to the defendant in front of the jury twice when he was asking questions directly about the defendant, and the witness looked at the defendant. And made -- and said yes. The identification was weak, but it was enough."

Defendant was sentenced to forty-five days in county jail and twelve months of supervised probation. Through counsel, Defendant gave oral Notice of Appeal on 24 July 2024 pursuant to N.C. Gen. Stat. § 7A-27(b)(1) and § 15A-1444(a).

## II.    Analysis

On appeal, Defendant argues the trial court erred by: (1) allowing the State to point to him while questioning witnesses, (2) denying his Motions to Dismiss, and (3) by denying his Motion for Judgment Notwithstanding the Verdict. We address each in turn.

### A. Pointing to Defendant

Defendant alleges the trial court erred by allowing the prosecutor to point to Defendant twice while questioning witnesses. Defendant concedes he did not object to the prosecutor's conduct at trial but asks us to review for plain error. An issue that

was not preserved by objection, rule, or law, "may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) (2024). "Plain error arises when the error is 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " *State v. Wright*, 284 N.C. App. 178, 191, 875 S.E.2d 552, 562 (2022) (alteration in original) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal quotation marks omitted)). Plain error review "should be applied cautiously and only in the exceptional case" where a grave error has amounted to "a denial of a fundamental right of the accused" and "resulted in a miscarriage of justice or the denial of a fair trial." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (citation and quotation marks omitted). To demonstrate plain error,

> [f]irst, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Id.* (internal citations and quotation marks omitted).

Defendant argues the prosecutor's act of pointing to Defendant during trial is equivalent to pointing at a defendant and asking a witness if the defendant is the person who committed the crime. *See United States v. Greene*, 704 F.3d 298, 311 (4th

Cir. 2013) ("It is well-settled that a prosecutor cannot verbally or physically point to a defendant and ask a witness if the defendant is the person who committed the crime." (citation omitted)). We note Defendant has not presented any binding authorities to support his claim that the prosecutor's actions amount to error. *See Soderlund v. Kuch*, 143 N.C. App. 361, 370, 546 S.E.2d 632, 638 (2001) ("[W]ith the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State." (citation and quotation marks omitted)); *but see Shepard v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 479, 617 S.E.2d 61, 64 (2005) ("Although we are not bound by federal case law, we may find their analysis and holdings persuasive." (citations omitted)).

Moreover, in the case *sub judice*, the State did not point to Defendant and ask the officers if Defendant was the person who committed the offense at issue; the State pointed to Defendant and asked two of the officers if they had "reason to come into contact with" Defendant. This line of questioning did not ask the officers to directly confirm or deny Defendant's guilt. Thus, the facts before us are distinguishable from those in *Greene*. *See Greene*, 704 F.3d at 310 (prosecutor directed witness to bank robbery to look at the defendant and describe the defendant's similarities to the bank robber). The only other case cited by Defendant in support of his argument is *United States v. Brown*, 644 F.2d 101, 103 (2d Cir. 1981), where the Second Circuit held the trial court did not err in allowing a witness to make an in-court voice identification

of the defendant. Because the case *sub judice* does not concern voice identification, we believe *Brown* is likewise distinguishable.

Nonetheless, even if it was error for the prosecutor to point at Defendant during questioning, Defendant has not shown that, absent the alleged error, the jury likely would have returned a different verdict. *See Reber*, 386 N.C. at 158, 900 S.E.2d at 786. Defendant argues the State pointed to Defendant twice; thus, the State could only have gestured to Defendant while questioning, at most, two of the four police witnesses. As such, at least two officer testimonies were not influenced by the State pointing to Defendant; those testimonies confirmed the same sequence of events and Defendant as the subject of the traffic stop. Therefore, Defendant has not shown that the prosecutor's act of pointing to Defendant during questioning had a probable impact on the trial's outcome. Consequently, Defendant has not shown plain error.

**B. Motions to Dismiss and for Judgment Notwithstanding the Verdict**

The trial court's denial of a motion to dismiss is reviewed *de novo*. *State v. Walters*, 276 N.C. App. 267, 270, 854 S.E.2d 607, 610 (2021) (citation and quotation marks omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied." *Wright*, 284 N.C. App. at 195, 875 S.E.2d at 564 (alterations in original) (citation and quotation marks omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation marks omitted). Evidence may be either direct evidence, "that which is immediately applied to the fact to be proved[,]" or circumstantial evidence, "that which is indirectly applied, by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred." *State v. Wright*, 275 N.C. 242, 249-50, 166 S.E.2d 681, 686 (1969) (citation omitted). " 'In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor.' " *Wright*, 284 N.C. App. at 195-96, 875 S.E.2d at 564 (quoting *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 115 S. Ct. 2565, 132 L. Ed. 2d 818 (1995)).

Defendant contends the trial court erred by denying his Motions to Dismiss the charge of Resisting a Public Officer. On appeal, Defendant does not argue there was insufficient evidence of each essential element of Resisting a Public Officer[1]; rather, Defendant asserts the State failed to produce substantial evidence he was the

---

[1] The elements of Resisting a Public Officer are "(1) that the victim was a public officer; (2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer; (3) that the victim was discharging or attempting to discharge a duty of his office; (4) the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and (5) the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse." *State v. Nickens*, 262 N.C. App. 353, 364, 821 S.E.2d 864, 873 (2018) (citing N.C. Gen. Stat. § 14-223 (2017)) (additional citation omitted). To the extent Defendant argued to the trial court that the State failed to produce substantial evidence of each element of the offense, he has abandoned this argument on appeal.

perpetrator of the offense. *See id.* at 195, 875 S.E.2d at 564 (explaining there must be substantial evidence of the defendant being the perpetrator of the offense being tried).

Defendant argues none of the witnesses at trial expressly identified him as the subject of the traffic stop. However, Defendant has cited no authority—and we know of none—requiring the State to present direct evidence in the form of an in-court identification to establish that Defendant was the perpetrator of the offense. Here, when Sergeant Murphy was asked, "Did you have an occasion to come in contact with Mr. Dingle, the defendant in the case today?" he responded "yes" and proceeded to describe the traffic stop at issue. When Lieutenant Fermin was asked, "Did you have any chance to talk with the defendant?" he responded "Yes, I did[ ]" and discussed the traffic stop. Sergeants Clarke and Knotts gave similar testimony affirming that they "had occasion to come in contact with the defendant, Mr. Dingle, here today."

"If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988) (citation omitted)). Moreover, when a witness has "a reasonable possibility of observation sufficient to permit subsequent identification, the credibility of the witness' identification of the defendant is for the jury[.]" *State v. Miller*, 270 N.C. 726, 732, 154 S.E.2d 902, 906 (1967). The officers' identification of Defendant by referring to him as "the defendant"

and "Mr. Dingle" and describing the events which took place during the traffic stop is substantial evidence from which the jury could find Defendant was the perpetrator of the offense. *See also State v. Watkins*, 247 N.C. App. 391, 396, 785 S.E.2d 175, 178 (2016) ("[T]he only question before us in an appeal from the denial of a motion to dismiss is whether a reasonable juror *could* have concluded that the defendant was guilty based on the evidence presented by the State. If so, even if the case is a close one, it must be resolved by the jury." (emphasis in original) (citations omitted)).

Thus, the evidence, taken in the light most favorable to the State, could support an inference Defendant committed the offense of Resisting a Public Officer. Therefore, there was sufficient evidence to submit the charge to the jury. Consequently, the trial court properly denied Defendant's Motions to Dismiss. Further, because "a motion for judgment notwithstanding the verdict and a motion to dismiss have the same effect and are reviewed under the same standard of review on appeal[,]" *State v. Draughon*, 281 N.C. App. 573, 585, 868 S.E.2d 365, 374 (2022), Defendant's Motion for Judgment Notwithstanding the Verdict was also properly denied.

## C. Conclusion

Defendant has not demonstrated it was error for the State to point to Defendant while questioning witnesses or that the jury would have reached a different verdict had this alleged error not occurred. Further, when viewed in the light most favorable to the State, substantial evidence was adduced at trial of

Defendant's identity as the perpetrator of the offense at issue. As such, the trial court did not err in denying Defendant's Motions to Dismiss and Motion for Judgment Notwithstanding the Verdict. Accordingly, we conclude Defendant received a fair trial free from error and affirm the Judgment of the trial court.

NO ERROR.

Panel consisting of Judges COLLINS, HAMPSON, and FREEMAN.

Report per Rule 30(e).